UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Donnie L. Geer,** *et al.***,**

    **Plaintiffs,**

**-V-**
                                                                   **Case No. 2:2003cv0084**
                                                                **JUDGE SMITH**
                                                                **Magistrate Judge Abel**

**United Precast, Inc.,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

Two claims are pending before this Court on behalf of Plaintiff Donnie Geer ("Geer") against the Defendant United Precast, Inc. ("United Precast"). The first claim is an Employee Retirement Income Security Act ("ERISA") claim in which Geer alleges that UPI wrongfully terminated his employment for the purpose of interfering with Geer's right to participate in the United Precast self-funded health insurance plan in violation of 29 U.S.C. § 1140, Section 510 of ERISA. Geer's second claim alleges that United Precast discriminated against him because of his association with his spouse, Kathy Merrill-Geer, a known disabled person in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12102, *et seq.* This matter is before the Court on Defendant United Precast's Motion for Summary Judgment (Doc 77). Based on the following, Defendant's Motion for Summary Judgment is **GRANTED**.

**I. FACTS**

Defendant United Precast is a manufacturer of precast concrete products used for the construction of highways, streets, bridges, and septic systems. (Geer Depo. at. 32). John Ellis has been the President and General Manager of United Precast for the past 36 years. (Ellis Depo. at 7). Plaintiff Geer began working for United Precast as a general laborer on June 4, 1984. (Geer Depo. at 27). Throughout Plaintiff Geer's employment, he received a number of promotions and was serving as the production foreman/plant manager at all times relevant to this action. (Geer Depo.at 28; Streby Depo. at 8). In that capacity, he reported directly to the production manager, Jim Streby. (Geer Depo. at 31; Ellis Depo. at 7; Streby Depo. at 7-8). Plaintiff Geer consistently received good performance evaluations including his last evaluation on August 3, 2001.

At all relevant times, United Precast offered health care benefits to its employees and their families through a self-funded insurance plan ("Plan"). (Beveridge Depo. at 9). By virtue of Plaintiff Geer's employment with United Precast, Plaintiff Geer's wife, Kathy Merrill-Geer ("Merrill-Geer") became a beneficiary of the Plan. E.S. Beveridge (hereinafter "Beveridge") serves as the administrator for the United Precast Plan. (Beveridge Depo. at 13-14; Ellis Depo. at 8). In early 2002, Beveridge recommended that United Precast do a re-enrollment of its employees for health insurance to determine what other coverage was available to its employees and their dependents. (Beveridge Depo. at 9-10). Beveridge had received information concerning Merrill-Geer that was not consistent with the information which Beveridge had on file and recommended that a re-enrollment of all employees be done to verify that Beveridge had accurate information relating to other insurance coverage available to

United Precast's employees and their dependents. (Johns Depo. at 31; Beveridge Depo. at 10-11).

United Precast employees routinely signed similar forms on an annual basis; however, in 2002, the forms were revised to request information regarding whether dependents were receiving Medicare or Social Security benefits. (Geer Depo. at 50). Geer's wife, Merrill-Geer, had a number of medical conditions which were diagnosed sometime in the 1990s and was receiving Social Security Disability Benefits and Medicare. (Geer Depo. at 52-53). Geer had confided in his supervisor, Jim Streby, about his wife's medical condition and acknowledged that both Mr. Streby and Mr. Ellis were aware that his wife was receiving Social Security Disability Benefits. (Geer Depo. at 57, 59).

On February 28, 2002, Plaintiff Geer completed the Employee Dependent Information Form which included questions concerning other insurance coverage. (Geer Depo. at 47-48, Ex. 2). The form signed in 2002 included the following question: "Do you or any of your dependents have other group medical insurance, Medicare, Medicaid or Social Security Disability benefits?" Geer checked the box marked "Yes" and indicated that his wife was covered. (Geer Depo. at 49, Ex. 2). However, he claims that he did not mark the form to indicate the specific type of benefits that his wife was receiving. (Geer Depo.at 49). Nevertheless, he acknowledges that the form accurately reflects the type of benefits which his wife was receiving. (Geer Depo. at 52).

The Plan documents for United Precast's self-funded insurance plan included a provision for terminating coverage for insured dependents on the occurrence of the earliest of several specific events, including six months from the date the insured dependent becomes totally disabled. (Beveridge Depo. at 15). Accordingly, based upon the information provided by Geer on the Employee Dependent Information Form, Geer was notified that his wife's insurance coverage was

3

being terminated.

Plaintiff Geer was upset when his wife's health insurance was terminated and attempted to speak with Mr. Ellis about it, but was unsuccessful. (Geer Depo. at 34-36). Geer met with Mr. Streby regarding the insurance issue in March of 2002, but nothing was changed. *Id*.

Geer had a reputation for running his mouth and bad-mouthing the company. (Ellis Depo. at 15; Streby Depo. at 9-10; Johns Depo. at 12). Mr. Streby had previously talked to Geer about running his mouth in the shops and told him that they just could not have that. (Streby Depo. at 10, 19). Mr. Streby was aware that the insurance for Geer's wife had been terminated because Geer had told Streby that he felt he was being shafted. *Id*. In addition, other employees had come to Mr. Streby to complain that Geer had been telling them that it was the goal of the company to shaft people out of their insurance. (Streby Depo. at 20).

Geer had also approached Mr. Streby about his wages. Apparently, Geer had not yet received his annual bonus and wanted a raise. Geer asked Streby if he would talk to Mr. Ellis about it and, when Mr. Streby did, Mr. Ellis said that nothing was going to be done about it. (Streby Depo. at 21). When Streby told Geer about his conversation with Mr. Ellis, he also asked Geer not to discuss his wages with the employees in the shops. *Id*. Following this discussion, on March 25, 2002, Mr. Streby prepared an Employee Disciplinary Record documenting the conversation. (Streby Depo. at 20-21, Ex. B).

In addition, Geer had approached Tad Johns, the Office Manager and Credit Manager for United Precast, to voice his complaints about his wages and benefits and the direction of the company. (Johns Depo. at 7, 10-11, 13). Mr. Johns did not supervise Geer and made no decisions with respect to his wages or benefits. (Johns Depo. at 10-11). Mr. Johns testified that Geer should

have gone to Mr. Streby with these issues and typically Mr. Johns just let him vent. (Johns Depo. at 11-14). However, two incidents occurred which Mr. Johns felt had to be addressed with Mr. Ellis. (Johns Depo. at 21). On March 29, 2002, Geer approached Mr. Johns in the plant and told Mr. Johns that "he was telling the men in his plant, especially the ones that he felt were pretty good workers, that they should probably move on, that they would never be appreciated here." (Johns Depo. at 14-16). Plaintiff Geer denies telling other United Precast employees that they should leave United Precast. (Geer Depo. at 84). Several days later, Mr. Johns overheard Geer complaining to Doug Pillow, one of United Precast's salesmen, that "the company was f____ing him." (Johns Depo. at 14). Geer told Mr. Pillow that "because of the change in benefits, that he deserved to get at least two or three more dollars an hour or he was being screwed out of two or three dollars an hour because he had to go to COBRA or do something different as far as his wife. (Johns Depo. at 14).

On April 3, 2002, Mr. Ellis met with Mr. Johns and Mr. Streby and discussed the fact that Geer was talking badly about the company and had been encouraging the laborers to leave. (Johns Depo. at. 19). They discussed the fact that Geer had already been asked not to carry on these types of conversations and create a work stoppage when he is on the clock and trying to run a crew. *Id.* Although Mr. Ellis was very concerned about the situation, no strategy was discussed during that meeting. *Id.*

On April 4, 2002, early in the workday, Mr. Ellis summoned Geer to the conference room for a meeting to discuss the issues he had discussed with Mr. Streby and Mr. Johns the previous day. (Johns Depo. at 21-22). When Mr. Geer arrived, Mr. Johns, Mr. Streby, Ray Harris, Adam Perkins, and Monica Pryor were present. (Geer Depo. at 86). When Mr. Ellis was questioned during his deposition concerning the reason he decided to have the meeting, he explained:

5

> I think that his disposition and attitude got to the point that we had to do something with him in the plant. He was disturbing other employees. And if you understand that one rotten apple can spoil a lot of rotten apples, it just got to the point that he was running interference and degrading the company and it wasn't a healthy situation. So, we had to do something. We had to remove him from the plant. We had to get him away from the employees. Geez, you just can't let something like that continue.

(Ellis Depo. at 17). When asked for an example, Mr. Ellis indicated that it had been brought to his attention that Geer was telling people something to the effect that United Precast was not a good place to work. (Ellis Depo. at 18). Geer was causing so much trouble in the plant that Mr. Ellis did not know what to do. (Ellis Depo. at 27-28).

On April 4, 2002, when Geer was brought into the office, Plaintiff Geer testified Mr. Ellis told Geer that he "was a bad influence on his coworkers," that he "was not to go out in the shop for no reason whatsoever," that he was not to "talk to anybody, socialize with anybody," and that he was to stay in the conference room for eight hours a day and do nothing. (Geer Depo. at 87). Plaintiff Geer was only permitted to leave to get a drink of water and go to the bathroom. *Id.* Geer did not challenge anything that was said. (Johns Depo. at 22-23).

Mr. Ellis testified that he did not want to fire Geer, but did not want him in the plant, so he decided to just put him in a holding pattern. (Ellis Depo. at 18). Mr. Ellis further testified that, at the time, he did not know and did not tell Geer how long he intended to have Geer in the conference room. (Ellis Depo. at 18-19). Plaintiff Geer testified that he asked Mr. Ellis how long the arrangement was to occur and that Mr. Ellis responded "forever." (Geer Depo. at 87). Plaintiff Geer also testified that he was told if he "left the room for any other reason besides to go to the bathroom or go to lunch, [he] was terminating [himself].

After the meeting concluded, Geer remained in the conference room for approximately 20

to 30 minutes. (Geer Depo. at 90). Geer testified that he felt like his blood pressure was going up, his heart started palpitating and he thought he was having a heart attack or anxiety attack and, therefore, he got up and left for the day. (Geer Depo. at 90-91)

The following day, Geer went to the office to pick up his paycheck from Monica Pryor. (Geer Depo. at 94, 96; Pryor Depo. at 15). Plaintiff Geer testified he spoke with Mr. Streby and Ms. Pryor while he was there and that both informed Geer that he was terminated from United Precast. (Geer Depo. at 95, 96). Neither Mr. Streby nor Ms. Pryor recall Mr. Streby being there. (Streby Depo. at 18; Pryor Depo. at. 15). Ms. Pryor testified that Geer brought in his uniforms and she assumed he had quit, but that she did not talk with Geer concerning the status of his job. (Pryor Depo. at 16).

Geer testified that he did not report for work on April 8th or April 9th, the following Monday and Tuesday and that he did not feel he needed to call in to report that he would be absent because he had been told he was terminated. (Geer Depo. at 97).

It is United Precast's company policy that an employee who was a no-call, no-show for three days could be terminated. (Streby Depo. at 23). In those cases, the employee is considered to have abandoned his job and the termination is automatic. *Id*. Defendant United Precast claims that when Geer did not call or show up for work for three days, Defendant believed he had abandoned his job and he was terminated in accordance with this policy. (Def's Mot. for Summ. J. at 10, *citing* Ellis Depo. at 28; Streby Depo. at 15; Johns Depo. at 37; and Pryor Depo. at 18-19).

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

7

> The judgment sought shall be rendered forthwith if the pleadings, Depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id., quoting Liberty Lobby*, 477 U.S. at 257. The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id., quoting Matsushita*, 475 U.S. at 586.

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Plaintiff Geer has two pending claims against United Precast: (1) an ERISA claim that United Precast wrongfully terminated his employment; and (2) an ADA claim that United Precast

terminated his employment because of his association with Merrill-Geer, a known disabled person. For the following reasons, the Court finds that Defendant United Precast is entitled to summary judgment on both claims.

**A.    The ERISA Claim**

Plaintiff Geer seeks relief under ERISA Section 510, which provides as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act (29 U.S.C. 301 et seq.), or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.  Specifically, Paragraph twenty-nine of the Amended Complaint avers, "United Precast wrongfully terminated Geer's employment for the purpose of interfering with Plaintiffs' right to participate in the Plan."  Defendant Precast argues that Plaintiff Geer's ERISA claim fails as a matter of law because he cannot establish that United Precast had a specific intent to violate ERISA. (Def's Mot. for Summ. J. at 11).  This Court agrees.

ERISA § 510 offers protection against two types of conduct: adverse action taken because a participant availed himself of an ERISA right (an "exercise" or "retaliation" violation),

10

and interference with the attainment of a right under ERISA (an "interference" violation). *Mattei v. Mattei,* 126 F.3d 794, 797 n. 4 (6th Cir.1997) (*citing Furcini v. Equibank, NA,* 660 F.Supp. 1436, 1439 (W.D.Pa.1987)). In this action Plaintiff Geer has not alleged that he suffered any adverse action because he availed himself of an ERISA right.  Plaintiff Geer has instead alleged an interference violation.

To avoid summary judgment on a § 510 interference claim, "an employee must show that the employer engaged in prohibited conduct for the purpose of interfering with the employee's attainment of any right to which he may become entitled under an ERISA-protected plan." *Roush v. Weastec, Inc.,* 96 F.3d 840, 845 (6th Cir.1996). Thus, in order to prevail on an interference claim, the plaintiff bears the burden of proving that the plaintiff's employer had a specific intent to violate ERISA. *Schlett v. Avco Financial Services, Inc.,* 950 F.Supp. 823, *834-835 (N.D.Ohio,1996) (citing *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992)); *Rush v. United Techs., Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991). The plaintiff "need not show that the employer's sole purpose in discharging her was to interfere with her health benefits, but must show that denial of benefits was a motivating factor in the decision." *Schlett*, 950 F.Supp. at 834-835.

The employee can meet his burden of establishing a *prima facie* case by presenting either direct or circumstantial evidence of intentional interference with her ERISA rights. *Id*.  Where there is not direct evidence, as in the present case, courts employ burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. Hinkle Manufacturing, Inc.*, 36 Fed. Appx. 825, 828 (6th Cir. 2002); *Humphreys*, 966 F.2d at 1043. Under the *McDonnell-Douglas* framework, the plaintiff has the burden of making out a *prima*

*facie* case of discrimination.  *Reeves v. Sanderson Plumbing Prods*., *Inc*., 530 U.S. 133, 142 (2000).  If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action against the plaintiff.  *See Id.*; *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the defendant comes forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination.  *See Id.*; *Burdine*, 450 U.S. 248, 253.  "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S.248, 253.

In the present case, Plaintiff Geer*,* to establish a *prima facie* case by circumstantial evidence, must show (1) that he was covered under the employer's plan; (2) that he was subjected to adverse employment action; (3) that he was meeting his employer's reasonable expectations; and (4) that he was discharged under circumstances that provide some basis for believing that the prohibited intent was present. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. Once the employer has met its burden, the burden shifts back to the employee to show that the employer's stated reason for the adverse action is pretextual. *See Smith*, 36 Fed.Appx. at *828.

There is no dispute with respect to the first prong and Plaintiff Geer's prior performance reviews indicate that he was qualified to continue working at United Precast.  With respect to the adverse action prong, the parties dispute the circumstances under which Plaintiff Geer's employment with Defendant United Precast ended. At this stage of the litigation, the Court must

draw all reasonable inferences in favor of the nonmoving party and thus the Court accepts Plaintiff's version. Consequently, the Court finds that Plaintiff Geer has met the adverse action prong.

Plaintiff Geer, in an attempt to meet his burden with respect to the fourth prong asserts: "Once [Plaintiff complained about the termination of Merrill-Geer's health insurance coverage], it was merely two months until Geer was terminated from UPI. This temporal relationship between the termination of Merrill-Geer's insurance and the termination of Geer's employment with UPI is sufficient evidence to establish UPI's specific intent in terminating Geer to avoid paying Merrill-Geer's health insurance benefits . . . ." (Pl's Memo. in Opp. at 7). Plaintiff Geer relies on *Smith v. Hinkle Manufacturing, Inc.*, 36 Fed. Appx. 825 (6th Cir. 2002) to support his position that the temporal proximity between the termination of his wife's health insurance and his own termination of employment with United Precast establishes United Precast's specific intent to interfere with the payment of future health insurance benefits.

Defendant United Precast argues, and this Court agrees, that *Smith* can be distinguished from this case as it relates to Plaintiff's temporal proximity argument. In *Smith*, the plaintiff-employee's employment was terminated approximately two weeks after her son was diagnosed with hydrocephalus. *Smith*, 36 Fed.Appx. at *2. Prior to the diagnosis, the employer had no knowledge that the plaintiff of any member of her family suffered from any medical condition which would require significant and medical treatment. *Id*.

In this case, unlike *Smith*, United Precast had been aware for some time that Plaintiff Geer's wife was disabled and that her medical bills were paid under United Precast's health insurance plan. Merrill-Geer had been diagnosed with a number of medical conditions sometime

13

in the 1990s. (Geer Depo. at 52-53). Geer had confided in his supervisor Jim Streby, about his wife's medical condition and acknowledged that both Mr. Streby and Mr. Ellis knew that his wife was receiving Social Security Disability Benefits. (Geer Depo. at 57, 59). Plaintiff Geer also acknowledged that medical bills had regularly been paid on his wife's behalf. (Geer Depo. at 61, 103). Thus, unlike in *Smith*, this was not a situation where United Precast was suddenly being faced with the potential for increased medical costs by virtue of having Merrill-Geer insured under its plan.

More significantly and fatal to Plaintiff's Geer's argument, unlike in *Smith*, Defendant United Precast did not have to terminate Plaintiff Geer to avoid paying Merrill-Geer's health insurance benefits like the *Smith* employer did to avoid paying the *Smith* Plaintiff's son's benefits. Instead, those benefits had already been terminated based upon a provision in United Precast's self-funded insurance plan which required that coverage be terminated for insured dependents on the occurrence of the earliest of several specific events, including six months from the date the insured dependant becomes totally disabled. (Beveridge Depo. at 15). The plan administrator was bound to follow the provision in the plan as stated and could not modify how those provisions were administered. Indeed, pursuant to the provision, Merrill-Geer was no longer entitled to benefits under the Plan and coverage under the Plan could not have been extended to Merrill-Geer, or any other disabled dependant, under the plan in effect at that time.

Based upon the foregoing discussion, the Court finds that Plaintiff Geer has failed to present sufficient evidence from which a reasonable jury could find that Defendant United Precast's termination of Plaintiff Geer was motivated by a desire to cut off his health benefits. Therefore, Plaintiff Geer has not fulfilled his burden of establishing a *prima facie* case.

Additionally, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff Geer has failed to adduce evidence from which a rational trier of fact could reasonably infer that United Precast's proffered reasons – Geer's bad-mouthing the company and encouraging the laborers to leave, conduct about which Geer had previously been warned – had either no basis in fact or were not the actual reasons for the alleged adverse action.  Thus, Plaintiff Geer is unable to establish pretext as a matter of law.  For this additional reason, Defendant United Precast is entitled to summary judgment in its favor on Plaintiff's ERISA claim.

**B.    The ADA Claim**

Plaintiff Geer maintains that Defendant United Precast wrongfully discriminated against Geer because of his association with Merrill-Geer, who is a known disabled person. (Compl. at ¶ 32).  Plaintiff Geer's claim is brought under a provision of the ADA that forbids discrimination against "a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

Claims are only infrequently brought under 42 U.S.C. § 12112(b)(4) and there are few decisions that have been asked to apply it. Case law in the Sixth Circuit addressing this issue is particularly limited. However, in *Overley v. Covenant Transport, Inc.*, 6th Cir. Case No. 05-5280,

2006 U.S. App. LEXIS 10618, an unreported decision from the Sixth Circuit, the Court adopted the four-part test developed by the Tenth Circuit in *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997) for establishing a *prima facie* case of disability discrimination in violation of the association provision. In *Den Hartog*, the Tenth Circuit held that a plaintiff can establish a *prima facie* case of association discrimination under 42 U.S.C. § 12112(b)(4) by showing that:

> (1) he was qualified for the position at the time of the adverse employment action;
> (2) he was subjected to an adverse employment action;
> (3) he was known by his employer to have a relative or associate with a disability; and
> (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the employer's decision.

*Overly*, at *13, citing *Den Hartog*, 129 F.3d at 1085. This same test has been adopted by the Seventh Circuit in *Larimer v. IBM Corp.*, 370 F.3d 698, 701-02 (7th Cir. 2004) and the Eleventh Circuit in *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999).

Defendant United Precast argues that it is entitled to summary judgment on Plaintiff Geer's ADA claim because Plaintiff Geer cannot establish all four elements of his *prima facie* case. (Def.'s Mot. for Summ. J. at 15).

For purposes of this Motion only, Defendant United Precast does not challenge Plaintiff Geer's ability to establish the requisite association with a disabled person (prong three). (Def's Mot for Summ. J. at 16). Defendant does, however, challenge Plaintiff's ability to establish the remaining three elements. *Id.* For the reasons discussed in Section III.A, *supra*, this Court must accept Plaintiff Geer's version of the circumstances surrounding his termination and thus the Court finds that Plaintiff Geer has satisfied the second prong. Similarly, as discussed in Section III.A.

16

*supra*, this Court rejects Defendant United Precast's arguments that Plaintiff Geer was not qualified for his position.[2]

Plaintiff Geer, in an attempt to establish the final prong of a *prima facie* case of discrimination, again seeks to rely on temporal proximity. (Pl.'s Memo. in Opp. at 10-11). Specifically, Plaintiff Geer argues: "Merrill-Geer's health insurance was terminated on February 1, 2002, and Geer was terminated from his employment on April 4, 2002. This close temporal proximity between the termination of Merrill-Geer's benefits and Geer's termination is sufficient to demonstrate that Merrill Geer's disability was a determining factor in Geer's termination. *Id*. at 10.

As Defendant United Precast points out, Plaintiff Geer's arguments are flawed. Plaintiff's own testimony makes it very clear that his employer was aware of his wife's disability for some time. (Geer Depo. at 57-58, 61). Plaintiff Geer testified that both Mr. Ellis and Mr. Streby were aware that Plaintiff Geer's wife was receiving Social Security Disability Benefits. (Geer Depo. at 59). Additionally, Plaintiff Geer acknowledged that medical bills had regularly been paid on his wife's behalf in conjunction with payments coming from Medicare. (Geer Depo. at 61-103). Further, Plaintiff Geer acknowledged that he had co-workers with spouses or family members with various medical conditions and that they were not terminated by United Precast. (Geer Depo. at 59). Finally, Plaintiff Geer testified that no one had ever commented on his wife's medical condition or the extent of the medical benefits paid on her behalf. (Geer Depo. at 61).

---

[2]Defendant United Precast admits that Plaintiff Geer had the skills to do his job, but argues that "his qualifications are suspect without some modification of his destructive attitude in the workplace." (Def.'s Mot. for Summ. J. at 17). The Court finds that Defendant's arguments serve to justify why the challenged actions were taken rather than to prove that, as a matter of law, Plaintiff Geer was unqualified.

Based upon the foregoing discussion, the Court finds that Plaintiff Geer has failed to present sufficient evidence from which a reasonable jury could find that Defendant United Precast's termination of Plaintiff Geer was motivated by his wife's disability. Therefore, Plaintiff Geer has not fulfilled his burden of making out a *prima facie* case.

Additionally, as with the ERISA claim, this Court, viewing the evidence in the light most favorable to Plaintiff, finds that Plaintiff Geer has failed to adduce evidence from which a rational trier of fact could reasonably infer that United Precast's proffered reasons – Geer's bad-mouthing the company and encouraging the laborers to leave, conduct about which Geer had previously been warned – had either no basis in fact or were not the actual reason for the alleged adverse action. Thus, Plaintiff Geer is unable to establish pretext as a matter of law. For this additional reason, Defendant United Precast is entitled to summary judgment in its favor on Plaintiff Geer's ADA claim.

## V. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 77).

The Clerk shall enter a final judgment in this case, dismissing all Plaintiff's claims with prejudice.

The Clerk shall remove Document 77 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases.

**IT IS SO ORDERED.**


    /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**